

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NS:MTK
F.#2016R00029

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 3, 2019

<u>By Hand and ECF</u>

The Honorable Roslynn R. Mauskopf
United States District Court
Eastern District of New York
225 Camden Plaza East
Brooklyn, New York 11201

       Re:    <u>United States v. Johan Antney, et al.</u>
                <u>Criminal Docket No. 17-229 (RRM)</u>

Dear Judge Mauskopf:

      The government respectfully submits this supplemental sentencing letter in advance of sentencing to provide the Court with the additional information requested by the Court in its April 25, 2019 Scheduling Order.

    I.    <u>The Co-Conspirators' Roles in the Robbery</u>

      In the early morning hours of December 30, 2015, the defendants Dashawn Tejada, Shaqueel Walker, Johan Antney, Jose Rivera, Raheem Kyser and a cooperating witness (hereinafter "Cooperating Witness-1") traveled from the Tompkins Houses in Brooklyn to the CityScapes nightclub in Queens, New York with the express intent to commit a robbery. Tejada was armed with a .9mm handgun. The defendants traveled to the club in three vehicles: (1) a white BMW sedan driven by Antney with Cooperating Witness-1 as a passenger; (2) a black Toyota rental car driven by Tejada with Kyser as a passenger; and (3) a burgundy Mercedes SUV driven by Walker with Rivera as a passenger. All three vehicles parked outside of the club. Tejada and Kyser exited their vehicle and entered the club to look for patrons with expensive jewelry. After the pair returned to their vehicle, all six conspirators observed the eventual victim standing outside the club wearing what appeared to be expensive gold chains. The co-conspirators subsequently recognized this individual to be a professional basketball player. After observing the victim and a female companion drive away in an Uber, the co-conspirators followed the Uber in their respective vehicles. While driving, the conspirators made plans via telephone to "box in" the Uber in order to effectuate the robbery.

Shortly after departing the club, the Uber stopped at a red light in the vicinity of 59-41 Maurice Avenue in Maspeth, New York. The white BMW driven by Antney pulled alongside of the Uber while the black Toyota driven by Tejada and the Mercedes truck driven by Walker pulled behind the Uber. Just as Tejada exited the vehicle to begin the robbery, the light turned green and the Uber drove off. Thereafter all three cars continued to follow the Uber. This sequence of events was captured on surveillance video from a nearby premises. A short time later, off camera, the three vehicles managed to box in the Uber. This time, the black Toyota driven by Tejada was positioned in front of the Uber, the white BMW driven by Antney pulled alongside the Uber, and the Mercedes truck driven by Walker blocked the rear of the Uber. Tejada, Rivera, and Cooperating Witness-1 exited their respective vehicles and pulled the victim and Uber driver out of the vehicle. Walker and Antney waited in the driver's seat of their respective vehicles continuing to block any avenue of egress. Thereafter, Tejada, Rivera and CW-1 removed property from the victim, including two gold chains and two cellular telephones. During the robbery, all of the co-conspirators wore masks with the exception of Tejada. Notwithstanding the victim's compliance, Tejada fired a gunshot striking the victim in the leg. Following the shooting, Tejada, Rivera and CW-1 got back into the waiting vehicles and fled the scene.

The government respectfully submits that each of the defendants in this robbery played an indispensable role in carrying out this crime and, with the exception of Tejada who is the most culpable, are equally culpable. As an initial matter, the drivers of the vehicles, Walker and Antney, precisely boxed in the Uber vehicle and allowed for the robbery to take place. The pair subsequently remained in their respective cars and whisked their co-conspirators away from the scene. Rivera is equally as culpable as he exited the vehicle and removed property from the victim. Tejada, obviously, is more culpable given his wanton discharge of his firearm, which struck the victim and caused serious physical injury.

II. Rivera's PSR Objections

A. Minor Role Reduction

The defendant Jose Rivera argues that he should receive a minor role reduction pursuant to U.S.S.G. § 3B1.2 given his actions, or lack thereof, during the commission of this crime. This contention is without merit. As discussed above, Rivera, along with his co-conspirators, specifically left the Tompkins Houses with the express purpose of committing a robbery and all of the conspirators, including Rivera, took steps to ensure the robbery was successful. Rivera did not simply get caught up in a spur of the moment robbery. Further, Rivera was not a passive participant "along for the ride." Rather, he exited his vehicle and removed property from the victim. While Rivera did not provide the firearm to Tejada, he was aware that Tejada was carrying a firearm for the purpose of conducting a robbery. Accordingly, a minor role reduction is not warranted in these circumstances.

      B. <u>Criminal History</u>

        As Rivera states, in the PSR, a criminal history point was assigned for an alleged petit larceny misdemeanor conviction from April 20, 2005. The defendant, however, properly points out that the sealing of the case could suggest that the charge was either dismissed or pled down to a violation and therefore is not subject to a criminal history point. Without more, the government agrees that Rivera should not be assigned a criminal history point for that offense.  Accordingly, the government believes that Rivera should fall within Criminal History Category III.   Thus, the defendant's total offense level is 20, which, based on a Criminal History Category of III, results in an advisory Guidelines range of 41-51 months' imprisonment.  The defendant is also subject to a mandatory consecutive 84-month term of imprisonment on Count Three, see § 2K2.4(b), making his effective Guidelines range 125 to 135 months.

                                              Respectfully submitted,

                                              RICHARD P. DONOGHUE
                                              United States Attorney

By:    /s/ Michael T. Keilty
        Michael T. Keilty
        Assistant U.S. Attorney
        (718) 254-7528

cc:    Gary  Farrell, Esq.
        Lawrence Dubin, Esq.
        Peter Quijano, Esq.
        U.S. Probation Officers Roberta Houlton & Shayna Bryant (by email)